# Richmond

## BOARD OF SUPERVISORS OF FAIRFAX COUNTY v. M. T. BROYHILL, M. T. BROYHILL, JR., AND JOEL T. BROYHILL, TRADING AS M. T. BROYHILL & SONS.

January 25, 1954.

Record No. 4167.

Present, Hudgins, C.J., and Eggleston, Miller, Smith and Whittle, JJ.

The opinion states the case.

*Robert J. McCandlish, Jr., E. Calvin Van Dyck* and *Richardson, McCandlish & Lillard,* for the appellant.

*Allen C. Adams, Thomas G. Mays, Jr., Adams, Porter &
Radigan* and *Oren R. Lewis,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

The Board of Supervisors of Fairfax County, hereinafter
called the Board, filed a petition against M. T. Broyhill,
*et al.,* hereinafter called Broyhill, for a declaratory judg-
ment, pursuant to sections 8-578 to 8-585, inclusive, Code
of 1950, praying that the court decree a certain sewer sys-
tem, claimed by Broyhill, to be the property of the Board.
A demurrer filed to the original petition was sustained and
the Board was permitted to file an amended petition. From
a decree dismissing this petition and adjudicating the sewer
system to be the property of Broyhill, we granted an appeal.

In the amended petition it was alleged that under the
provisions of section 1560m, Code of 1942, the Circuit
Court of Fairfax County, on April 23, 1943, created Sanitary
District No. 1 in said county; that pursuant to the provi-
sions of this Act as amended (especially by Chapter 15,
Acts of 1942) the Board, on April 18, 1945, enacted an
ordinance setting forth the rules and regulations govern-
ing sewerage facilities in the sanitary districts in Fairfax
County, said ordinance becoming effective May 5, 1945;
that section V. A. 5 of the ordinance provides:

"Any person contemplating the construction of such
sewerage works shall, at the time of submitting the plans,
specifications and contract documents therefor, agree by a
written contract approved by the Attorney for the Com-
monwealth, that if such plans, specifications and contract
documents are approved, that upon the completion of the
construction of such sewerage works and the approval
thereof by the Sanitary Engineer the sewerage works so
constructed will become the property of the Board and will
thereafter be subject to all of the regulations concerning the
facilities of the District as approved by the Board."

Further, the material allegations of the amended petition are that in 1942 the Federal government constructed sewerage facilities to serve that portion of Fairfax County now constituting Sanitary District No. 1; that the county at first leased this system from the Federal government and later issued bonds in the sum of $3,000,000 for the purpose of purchasing the system and constructing a sewage treatment plant, the system being purchased by the Board on December 5, 1950, since which time the county has operated the sewerage facilities; that Broyhill, owners of the subdivision known as Broyhill Park, dedicated the same as a subdivision, and on May 16, 1950, applied to the Sanitary Engineer of Fairfax County for permission to construct a sewerage system in Broyhill Park, which application was approved on June 2, 1950; whereupon Broyhill constructed the system and connected it to the system owned and operated by the Board, which construction was completed on December 18, 1950, and approved by the Sanitary Engineer on December 19, 1950.

It is further alleged that Broyhill Park sewerage system is governed by the ordinance of April 18, 1945; that Broyhill failed to sign a contract "as expressly required in the aforesaid Section V. A. 5 of the ordinance", but that the said sewerage system became the property of the Board upon the completion thereof and upon approval by the said Sanitary Engineer; that an implied contract arose by the operation of said Section V. A. 5 whereby the Board became "irrevocably obligated", after approval of the system and its connection to the county system, to dispose of the sewage of Broyhill Park through its system in return "for the obligation" of Broyhill to sign a written contract conveying to the Board "title to the said sewerage works"; that the signing of the written contract by Broyhill was not a prerequisite to the formation of the said implied contract but was instead the obligation and duty of Broyhill under the implied contract; that under this obligation it was the duty of Broyhill and not the Board to provide the impetus

for the signing of the contract; that the Board has fully carried out its obligation by disposing of the sewage from said subdivision; that Broyhill has benefited by having this sewage disposed of by the Board; that no consideration for this benefit has ever passed from Broyhill to the Board; and that Broyhill has never signed the written contract contemplated by the ordinance conveying title to the Board; that although Broyhill has been made aware of the position of the Board that title to the system is in the Board, Broyhill since said awareness has never asked the Board to discontinue its service but has continued to enjoy the benefit thereof; that Broyhill is charged with constructive knowledge of the terms of Section V. A. 5 of the ordinance; that having received the benefits from the system Broyhill is estopped from asserting lack of actual knowledge as a defense, and is further estopped from asserting "that no implied contract exists"; that Broyhill has made numerous applications to the Board for sewerage service and individual connections to the system; that each application contained the following commitment, to-wit: "I agree to observe and comply with all ordinances and rules and regulations adopted by the said Board concerning the service rendered by the sewerage facilities of the District"; that the signing of said applications by Broyhill "was an express agreement on their part to abide by the provisions of the said Section V. A. 5"; that Broyhill on at least one occasion acknowledged the exclusive control of the sewerage system to be in the Board in that they requested that a certain dispute between Broyhill and the Sanitary Engineer be settled by the Board as ultimate authority; further, it is alleged that there had been an effective dedication of the system to the Board, duly accepted.

It is further alleged that Broyhill attempted to collect from Robert E. Stafford, Inc. *et al.*, owners of a subdivision known as "Slade's Addition to Broyhill Park", a sum of money for the privilege of connecting their system to the Broyhill sewerage system. The right of Broyhill to make

such demand was challenged by the Board. (This demand on the part of Broyhill admittedly precipitated the present controversy.)

The prayer of the petition concludes: "Your petitioner prays that said judgment declare that the said Board of Supervisors of Fairfax County have been the sole owners with exclusive right of control of the said sewerage system of Broyhill Park * * * since the date of the said completion and the approval of December 19, 1950."

A demurrer was filed to the amended petition alleging that the ordinance as a whole, and especially Section V. A. 5 thereof, was invalid. The demurrer was overruled and Broyhill was allowed time in which to file their answer.

The answer denied most of the allegations in the petition and called for strict proof thereof; it denied that title to the sewerage system had ever been in the Board; it denied the validity of Section V. A. 5 of the ordinance; it denied the allegations in the petition to the effect that by virtue of the connection of their system to that of the Board there was an effective dedication and passage of title of said system to the Board or that there had been an acceptance of such dedication by the petitioner. The answer admitted that Broyhill had never asked the Board to discontinue its disposal service to Broyhill Park; it admitted that Broyhill had made application for the connection of its system to the county system; it also admitted that Broyhill had made applications to the Board for service to individual houses in Broyhill Park which contained the agreement that Broyhill would comply with certain ordinances, rules and regulations of the Board, but this, it was charged, related only to the service to be rendered and in no way related to the ownership of the system itself.

It was charged, moreover, that the established policy and custom of the Board had been to operate, maintain and service sewerage systems in Sanitary District No. 1 and elsewhere in Fairfax County and that the Board had not required the developers of subdivisions to surrender owner-

ship of such systems to the Board until they had collected from builders and contractors connecting to said systems compensation for the cost of installing the same. The assertion was made that Broyhill had paid out approximately $50,000 for the sewerage system in Broyhill Park and therefore should be permitted to recover this sum from other developers before surrendering title to the Board.

The answer further charged that petitioner had, in violation of its implied agreement with defendants, allowed one Robert E. Stafford, Inc., to connect onto and use the sewer system owned and built by the defendants in Broyhill Park without the payment of any money to Broyhill for such connections and use, and that they (Broyhill) had received no compensation from any source to reimburse them for the construction of said system.

We have not attempted to set out in full the allegations in the petition, neither have we attempted to recite the answer in full. We have endeavored to summarize the pleadings and point out the contentions of the parties.

No evidence was taken in the case. The final decree recited that the court made its decision "without the taking of evidence, * * * both parties expressly agreeing to submit the case on the pleadings, arguments and briefs, without evidence".

The decree entered on November 17, 1952, which is the decree appealed from, stated, *inter alia*: "The Court does not feel that it is necessary to pass upon the legality or constitutionality of the Enabling Act or the Ordinance in question, but the court does not feel that the county can acquire title under its authority from the Enabling Act by the mere passage of an ordinance to acquire title to the defendant's property. The ordinance itself contemplated that a written contract, approved by the Commonwealth Attorney, be consummated before title passed. For the foregoing reasons the Court is of the opinion that title and ownership in the above described sewer works, * * * is in the defendants (Broyhill) and that the County of Fairfax

did not and has not acquired any title whatsoever in the said sewer works." Whereupon, the petition was dismissed.

In its assignments of error the Board alleged that despite the fact that no evidence was taken the allegations of the petitioner which were admitted by defendants in their answer constituted sufficient basis for a decision in favor of the Board; that the admitted facts showed that a contract implied in law arose under the operation of Section V. A. 5 of the ordinance; that the facts alleged by petitioner and admitted by defendants were sufficient to show that a dedication of the sewerage system had taken place.

The foregoing recitation shows the course of this litigation. Suffice it to say that the questions here presented involve a matter affecting the public interest and are of such magnitude that we are unwilling to attempt to conclude the case on the record before us.

The pleadings, to say the least, were not all that might be desired, and the answer filed, calling for "strict proof" of allegations in the petition, indicated that evidence was necessary to establish the facts alleged. Likewise, affirmative charges in the answer should have been supported by evidence.

Broyhill apparently relies on an alleged agreement with the Board that they would not be required to sign the contract called for in the ordinance until they had been reimbursed for a certain portion of the costs of installing the system in Broyhill Park. There has been no proof of any such agreement between Broyhill and the Board, neither has it been alleged nor proved that if there were such an agreement that the same was in the public interest and authorized by law.

We cannot tell from the record before us what, if any, contract, written or otherwise, existed between Broyhill and the Board. Broyhill asserted in their answer that the Board, through custom or contract—we cannot tell which— has permitted other developers to recoup their investment in sewer systems before requiring the surrender of title to

the Board. Proof of such dealings, with reasons therefor, may be helpful in the determination of the controversy. There is no unchallenged admission that the Board, either by contract or resolution, has authorized Broyhill to collect from other developers for the privilege of connecting to the sewerage system. Evidence is necessary to clarify the claim that Broyhill is legally entitled to make such collections. There are other allegations in the petition and charges in the answer on which proof will be necessary before a decision can be reached.

Broyhill concedes that if and when they are permitted to collect the *pro rata* part of the cost of installing the system in Broyhill Park, then in that event the system becomes the property of the Board. The decree appealed from is not responsive to such admission. The decree held that the "title and ownership in the above described sewer works" was in Broyhill, and that the Board had not acquired "any title whatsoever to said sewer works".

We are of the opinion that the decree should be reversed and the case remanded to the Circuit Court of Fairfax County, with leave granted the petitioner, if so advised, to amend the petition so as to allege all grounds relied on for the relief sought; that leave be granted the defendants to file an answer developing the issues presented; and that full and complete evidence be taken in the case.

We are further of the opinion that the parties to this litigation shall each pay the costs expended by them on this appeal.

*Reversed and remanded.*